Carmelo RODRIGUEZ, Petitioner—
Appellant,

v.

A. ALEXANDER, Acting Warden CTF Soledad, CA.; Attorney General of the State of California; Los Angeles County Superior Court, Respondents—Appellees.

No. 99–55282.
D.C. No. CV–95–02483–HLH(Mc).

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Decided Feb. 11, 2002.

Before BRIGHT,* KOZINSKI, and W. FLETCHER, Circuit Judges.

MEMORANDUM **

Petitioner Carmelo Rodriguez appeals the district court's denial of his petition for writ of habeas corpus, arguing that his confession, which was admitted at trial, was involuntary, and that he received ineffective assistance of counsel when his trial attorney failed to object to its introduction. For the reasons discussed below, we affirm the district court's holding that Rodriguez

---

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

did not receive ineffective assistance of counsel. However, we reverse and remand for an evidentiary hearing on the question of the voluntariness of the confession.

## Admissibility of the Confession

■ Rodriguez argues that he is entitled to an evidentiary hearing in the district court on the issue of whether his confession was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or was otherwise involuntary. We agree that an evidentiary hearing is warranted.

Because Rodriguez's petition was filed before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the act does not apply to this case. *Whelchel v. Washington*, 232 F.3d 1197, 1202 (9th Cir.2000). Under pre-AEDPA law, a habeas petitioner is entitled to an evidentiary hearing on a claim in which the facts are disputed if two conditions are met: (1) the petitioner's allegations would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

Both conditions are met in this case. First, Rodriguez's allegations, if proved, would mean that it was error for the state trial court not to suppress the incriminating statements made to Detective Campos. To the extent that Rodriguez argues that his earlier, un-Mirandized statement "tainted" the police process and thereby rendered inadmissible his later, incriminating statement, that argument is foreclosed by United States Supreme Court and Ninth Circuit precedent. *See Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *United States v. Orso*, 266 F.3d 1030, 1038–39 (9th Cir. 2001) (en banc). However, Rodriguez further argues that even if the initial failure to Mirandize does not render the later Mirandized confession inadmissible, the totality of the circumstances surrounding the making of the later confession demonstrates that it was coerced, and therefore it should be suppressed as involuntary.

In evaluating the voluntariness of a confession, "[t]he test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Derrick v. Peterson*, 924 F.2d 813, 817–18 (9th Cir.1990). When assessing whether police used coercive means to undermine a suspect's ability to exercise his free will, the court's task is to examine "all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 220, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1971). Factors to be considered in this evaluation include the "length of detention," "the lack of any advice to the accused of his constitutional rights," the "repeated and prolonged nature of questioning," and "the use of physical punishment such as the deprivation of food or sleep." *Id.* The Supreme Court has recognized "that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Cooper v. Dupnik*, 963 F.2d 1220, 1241–42 (9th Cir.1992) (en banc) (citations and quotations omitted). Likewise, it has held that a confession is not free and voluntary if "obtained by any direct or implied promises, however slight. Evidence so procured can no more be regarded as the product of a free act of the accused than that obtained by official physical or psychological coercion." *Shotwell Manufacturing Co. v. United States*, 371 U.S.

341, 347–48, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963).

If the allegations made by Rodriguez in his petition and his trial testimony are credited as true, his confession was involuntary and should have been excluded by the state trial court. Rodriguez asserts that Campos used implied promises of leniency, threats, physical torture and oppressive psychological coercion to force a false confession. He testified at trial that he arrived at the police station around 6 a.m. and was questioned continuously until Campos arrived seven hours later. During that time, he said, he was not offered food or the opportunity to make telephone calls. Rodriguez testified that Campos interrogated him for an additional four hours, and that during the interrogation, the detective insulted him, pushed him repeatedly into a table, yelled at him, and spat at him several times. Rodriguez said that the detective pressured him to confess by making untrue statements, telling him that his housemates had provided statements against him and that his girlfriend had told police that she had a relationship with the victim.

Most notably, Rodriguez testified that Detective Campos made an explicit promise to release him without charge if he confessed. According to Rodriguez, Campos left the interrogation room and returned again. The detective then told Rodriguez that he knew Rodriguez had not committed the crime. Campos said that he was not looking for the actual perpetrator because "it was too much of a problem," and that he merely needed to find someone who would take responsibility so that he could complete the police paperwork. Campos suggested that Rodriguez write a false confession saying that he had shot the victim, but that it had been "just a fight" over a woman and that the shooting had been in self-defense. If Rodriguez would do so, Campos promised, there would be no charge against him, and he would "be free to roam the streets." The detective also threatened him, saying if he did not write the proposed confession, Campos would single him out in court and "send him to the electric chair." Rodriguez testified that he believed Campos' threats and promises. Rodriguez's trial counsel testified in a deposition that Rodriguez considered the promise of release plausible because such police practices are not uncommon in Rodriguez's native Mexico.

Rodriguez testified that he succumbed to Campos' pressure, writing the confession precisely as Campos narrated it, because he was tired and hungry and thought that he would be released. He said Campos forced him to sign and initial the document. At trial, Rodriguez testified that the entire confession was untrue. On appeal, he emphasizes that the time at which the written confession said the killing occurred was a time at which, according to prosecution testimony, the victim was still at home. This inconsistency, he argues, further demonstrates that the confession was both false and involuntary.

Campos directly contradicted Rodriguez's account. Campos testified at trial that the interrogation lasted only an hour and a half and that Rodriguez simply volunteered the confession after Campos pointed out "some of the discrepancies" between earlier versions of his story. Campos claimed that he was unaware that Rodriguez had been at the station all day and unaware that he had not had anything to eat during that time. He testified that he never threatened Rodriguez or used any force against him during the interrogation.

For purposes of determining whether Rodriguez is entitled to an evidentiary hearing on the question of the voluntari-

ness of his confession, this contradictory evidence is irrelevant. Rodriguez need only show that his allegations, *if proved,* would entitle him to relief. *Hendricks,* 974 F.2d at 1103. If Rodriguez's allegations are true, the totality of the circumstances indicates that his confession was coerced and should have been suppressed by the state trial court as involuntary. Accordingly, the first prong of the test for an evidentiary hearing is met.

The second prong is also met, because the state court trier of fact has not reliably found the relevant facts. *Hendricks,* 974 F.2d at 1103. Rodriguez and Campos both testified at trial. Among other things, they testified concerning the events surrounding the confession. But the jury was asked to decide guilt or innocence; it was not asked to decide whether Rodriguez's statement had been made involuntarily. Regardless of any ultimate jury determination on guilt or innocence, a "full and fair hearing" on the question of voluntariness was not held "unless the state court actually reached and decided the issue of fact tendered by the defendant." *Townsend v. Sain,* 372 U.S. 293, 313–14, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The state court must have decided the asserted claim on the merits in order to have "found the relevant facts." *Id.* at 314, 83 S.Ct. 745. Because no pre-trial motion was made to exclude the confession, and Rodriguez's counsel did not object to its admission at trial, the state court never held a "full and fair hearing" on the voluntariness question. Accordingly, a district court evidentiary hearing was required.

Even if Rodriguez is able to show that it was error for the state trial court to admit the confession, he must also show that the error was not harmless in order to receive relief through a writ of habeas corpus. *See Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (error must have had a "substantial and injurious effect or influence on the jury's verdict"). We do not reach the question whether the error, if indeed there was error, was harmless under *Brecht.* We believe it is better for the district court to make that determination in the first instance.

*Ineffective Assistance of Counsel*

■ In order to demonstrate that his counsel's performance was constitutionally ineffective, Rodriguez must show, first, that the performance was so deficient that it fell below an "objective standard of reasonableness," and, second, that this deficient performance prejudiced the defense and made the trial results unreliable. *Strickland v. Washington,* 466 U.S. 668, 688–694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Van Tran v. Lindsey,* 212 F.3d 1143, 1156 (9th Cir.2000). We do not reach the question of prejudice, because Rodriguez cannot satisfy the first prong of the *Strickland* test. Strategic decisions that are not objectively unreasonable do not constitute deficient performance. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"); *Jackson v. Calderon,* 211 F.3d 1148, 1156 n. 4 (9th Cir.2000). After reviewing the deposition of trial counsel, the district court concluded that defense counsel made a strategic choice, and that this choice was not so professionally unreasonable as to constitute ineffective assistance of counsel. The district court did not err in so concluding.

AFFIRMED in part and REVERSED in part, and REMANDED.